IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH A. HIBBLE, Personally, on behalf of CRH a minor, and as the Administratrix of the ESTATE OF MICHAEL W. BROOK; and ELIJAH L. ROTHELL, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF HARRISBURG PENNSYLVANIA, <br> Defendant | CIVIL ACTION NO.: 1:25-cv-00636 <br><br> JURY TRIAL DEMANDED |

**DEFENDANT CITY OF HARRISBURG'S REPLY BRIEF IN RESPONSE TO PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY (DOC. 18)**

COMES NOW Defendant City of Harrisburg and files this Reply Brief to Plaintiffs' Brief Opposing Defendants City of Harrisburg's Motion to Disqualify (DOC. 11) and shows this Honorable Court as follows:

**I. The special expertise and unique qualifications of Plaintiffs' counsel do not necessitate exclusive representation of Plaintiffs by him.**

It is acknowledged that Attorney Jacob is a member of the Pennsylvania civil rights bar, and capable counsel. (DOC. 18 pp. 2-3) As described, his considerable experience as a civil rights attorney and his affiliation with nationally recognized civil rights law firms has garnered him a fine professional reputation. (DOC. 18 pp. 2-3) However, notwithstanding his self-describeed qualifications, he fails to

1

plausibly argue that the instant matter is of such a special nature that Plaintiffs' chances of recovery in this matter are so abysmal, as he argues, without his representation of all three (3) Plaintiffs. (DOC. 18 p. 3) Attorney Jacob argues that no other attorney would be willing to litigate the instant claim and implies, by dint of his special abilities and unique experience, would be able to represent them nearly as competently as he could in this matter. (DOC. 18 p.3)

Even assuming that there are no such capable and willing counsel in the local or regional bar (which is strenuously denied, given the active civil rights/personal injury bar, just in the Harrisburg and Philadelphia metropolitan area alone), Plaintiffs can take advantage of the variety of offerings of an enormous national civil rights bar, any of whom, with the assistance of local counsel, could readily undertake to represent the Plaintiffs in the instant matter.

Contrary to his arguments, Attorney Jacob's self-purported special experience in litigating the "State-Created Danger" doctrine, as a reason against disqualification, should not be accorded significant weight in the matter, because this legal theory is inapposite in the instant case. (DOC. 18 p. 3) As argued in City's Brief in Support of its Motion to Dismiss, the State-Created Danger theory, which triggers the protections of the Due Process Clause, applies only in certain limited circumstances, in which the government restrains an individual's liberty, such that he is unable to act on his own behalf. (DOC. 12) Alternatively, to invoke due process

claims, the government must take affirmative actions, such that a relationship between the government and a foreseeable victim is formed (requiring actual contact between the government and the victim) that places that individual at risk of harm by the conduct of third parties, rather than any undifferentiated harms purportedly caused by public facilities created and/or operated by the State. (DOC. 12) Ostensibly, the required elements of the doctrine are not met here. In essence, the instant matter boils down to a relatively uncomplicated personal injury tort case, subject to the provisions of the Pennsylvania Political Subdivision Tort Act and the Recreational Use of Land and Water Act (RULWA). For these reasons, such a case is manageable by any number of competent counsel in the local or regional bar.

Notably, even assuming that a case for the State-Created Danger theory were determined to be viable, the value of Attorney Jacob's expertise would already have been realized, and the purportedly significant need for continued representation by him becomes diminished, as all the "heavy-lifting" of identifying and pleading a viable federal cause of action has already been completed.

## II.     Plaintiffs have significant adverse interests in the instant matter.

Counsel argues that Plaintiffs have not asserted actions against each other in this case and do not intend ever to do so. (DOC. 18 pp. 5-7) He states that they are unified in their pursuit of the City for their damages and maintain that there are no other viable causes of action against any other party, or any comparative fault on

the part of any other party. (DOC. 18 pp. 5-7) However, these assertions notwithstanding, Plaintiffs' counsel cannot reasonably believe that he is, at this early stage of litigation, able to ascertain all potential claims, not having had the benefit of discovery, nor that he will be able to provide competent and diligent representation to all Plaintiffs.

>The Pennsylvania Rules of Professional Conduct provide:
>
>>Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>>(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>>(2) the representation is not prohibited by law;
>>(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>>(4) each affected client gives informed consent.

Pa. R.P.C. 1.7(b).

Plaintiffs clearly have adverse interests, especially in the context of comparative liability in the state tort claims, in which a determination must be made regarding the assignment of fault among the parties. Further, as discussed in the City's Brief in Support, in the very probable scenario, in which recoverable damages in the instant cause of action is limited to a capped sum of $500,000, under the Political Subdivision Tort Claims Act, it would be advantageous for one Plaintiff to advance a theory of comparative liability of the co-Plaintiff and adduce evidence of contributory negligence of one party against the other, in the state tort claims, in

order to maximize his recovery. (DOC. 15 pp. 8-9) In such a scenario, counsel's loyalty to one Plaintiff is necessarily compromised by his loyalty to the other, as he is precluded from zealously advocating this position due to the potential harm to the other client. Moreover, if information in support of a theory of comparative fault were derived directly from the representation, counsel would be precluded from disclosing it, due to his duty to maintain client confidentiality.

Additionally, contrary to counsel's assertions, settlement negotiations will be fraught with ethical dilemmas when damages are capped in the state tort claims, in which Plaintiffs' claimed damages exceed the tort limits. A demand for a higher recovery for one is most certainly a reduction for the other, in the resulting "zero-sum" game, obviously placing limitations on counsel's responsibilities of diligent representation. As a result, Plaintiffs' counsel is thus barred from joint representation under subsection (b)(1) of Rule 1.7.

### III. The conflict of interest is not cured by the alleged informed consent of Plaintiffs and the conflict of interest so great that it is not waivable.

Plaintiffs' counsel claims that any conflicts of interest are cured by the provision of Plaintiffs' informed consent in executed waivers, which documents he states he is willing to offer for *in camera* review. (DOC. 18 pp. 7-8) He states that the waivers evince an acknowledgment that Plaintiffs have no good-faith basis to sue each other, and that they have no intention to do so. (DOC. 18 pp. 7-8) In obtaining Plaintiffs'

informed consent, counsel indicates that he clearly discussed all potential outcomes, including "uncapped damages (federal claims), capped damages (state claims), settlements offered to one and not the other, settlement offers below the cap amount, etc." (DOC. 18 pp. 7-8) He states that the Plaintiffs "reached an agreement regarding the value of their injuries and how each scenario will be handled in the event it occurs." (DOC. 18 pp. 7-8)

Assuming that counsel prepared purportedly comprehensive waivers and thoroughly discussed "all potential outcomes" regarding damages and potential settlement offers, as he avers, the likelihood of his obtaining the requisite informed consent from Plaintiffs, within the meaning of Pa. R.P.C. 1.7(b)(4), is ostensibly low. It is likely beyond a layperson's understanding to analyze the subtleties of comparative fault and the competing interests at issue in the case, in addition to the lawyer's duties and responsibilities regarding diligent representation in this context. Indeed, counsel's description of the waiver, as stating the lack of a "good-faith basis" to assert claims against each other (DOC. pp. 7-8), demonstrates that counsel cavalierly led Plaintiffs to such a conclusion at the outset of the case without the benefit of any discovery, in inducing them to waive such significant rights. Accordingly, whether the Plaintiffs consent was "informed" warrants very strict scrutiny.

Furthermore, counsel's vaunted unique and rare qualifications to handle this type of case, and the fact that he is an attorney who enjoys a "good national reputation," which he almost certainly advertised to his clients, just as he has done before this Honorable Court, very likely played a crucial role in their decisions to retain him as their joint counsel, notwithstanding any stated potential conflicts of interest—a factor which very likely obscured potential problems of joint representation and was calculated to vitiate any concerns surrounding a conflict of interest. Therefore, the purported informed consent provided by the waivers are insufficient, under Pa.R.Prof.Cond. 1.7(b)(4).

### IV.   The Purported Benefits of Joint Representation are Illusory

Plaintiffs' counsel recites the purported benefits of joint representation in support of his argument. (DOC. 18 p. 8) He states that "litigating as a team will maximize their ability to force the City to settle the lawsuit for the highest amount possible." (DOC. 18 p. 8) Contrastingly, litigating with separate representation would "potentially undermine their respective claims against the City." (DOC. 18 p. 8) However, counsel fails to explain why either proposition is true. In the first instance, whether one or two, or more, attorneys represent Plaintiffs in the instant matter can have no reasonably perceptible impact on the City's appetite for settlement. Indeed, a larger number of lawyers advocating the same cause would or could potentially readily induce Defendant to compromise, given the greater skills and resources of

multiple adversaries Defendant would face in protracted litigation, as well as the greater number of advocates who support the worthiness of the case.

In the second instance, counsel fails to explain how having separate counsel could undermine their respective claims against the City. Indeed, maintaining separate counsel ensures maximum potential respective recovery of each Plaintiff's damages in this matter, due to the augmentation of skills and resources that accrue to both parties in the case, and especially in view of the most probable scenario of capped recovery of damages, as fully discussed *supra*. Likewise, the individual claims of each plaintiff most assuredly could run contrary to each other as their respective underlying claims against the City are adverse.

Regarding Plaintiffs' litigation costs, counsel states that Plaintiffs will be "forced to pay two attorneys instead of one." (DOC. 18 p. 8) This proposition is deceiving and a bit disingenuous, in view of the fact that counsel's fee is most probably based on a contingent-fee arrangement, in which each Plaintiff pays an agreed percentage of their respective recoveries, just as in any other contingent-fee arrangement in a personal injury case. Even without direct knowledge of the fee arrangement, it can readily be assumed that the joint representation is most certainly very different from a "two-for-one" value savings. And regarding expert witnesses, if the parties engaged separate attorneys, they may still enjoy the option of economizing and sharing experts. Multiple attorneys can, and often do, jointly retain experts to

streamline the process, and save costs. Therefore, retaining separate counsel does not preclude Plaintiffs from taking advantage of these same economic benefits.

Further, while significant consideration is given to a Plaintiff's right to the counsel of their choice, given the substantial arguments stated herein, it is in the interest of not only the Plaintiffs individually, but the court itself to address the inherent conflicts as well as those that most assuredly could arise during the pendency of the case as early as possible in the course of litigation. Waiting would only serve to further complicate matters for the court and compromise the Plaintiffs. Therefore, Attorney Devon Jacob should be immediately disqualified.

## V. CONCLUSION

Based on the facts and law cited in Defendant's Motion to Disqualify Counsel (DOC. 11), their Brief in Support (DOC. 15), and this instant Reply Brief herein, Defendant respectfully requests this Honorable Court disqualify Attorney Devon Jacob or schedule oral argument, if necessary, on Defendant's request for relief.

                                                               Respectfully submitted,

                                                               **LAVERY LAW**

Date: July 21, 2025                    /s/ Frank J. Lavery
                                              Frank J. Lavery, Esquire
                                              Atty. ID #42370
                                              Andrew W. Norfleet, Esquire
                                              Atty. ID #83894
                                              Jennifer L. Ruth, Esquire

                                      Atty. ID #93960  
                                      225 Market Street, Suite 304  
                                      Harrisburg, PA 17101-2126  
                                      flavery@laverylaw.com  
                                      anorfleet@laverylaw.com  
                                      jruth@laverylaw.com  
                                      717-233-6633 (T)  
                                      717-233-7003 (F)

## CERTIFICATE OF SERVICE

I, Andrew W. Norfleet, Esquire, an employee of Lavery Law, do hereby certify that on the 21st day of July, 2025, I served a true and correct copy of the foregoing Motion to Disqualify Plaintiffs' Counsel via the Court's ECF System as follows:

Devon M. Jacob, Esquire
Jacob Litigation, Inc.
P.O. Box 837
Mechanicsburg, PA 17055-0837
*Counsel for Plaintiffs*

>                                    */s/ Andrew W. Norfleet*
>                                    Andrew W. Norfleet, Esquire

This document has also been electronically filed and is available for viewing and downloading from the ECF system.