**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ELIZABETH A. HIBBLE, *Personally, on behalf of CRH, a minor, and as the Administratrix of the Estate of Michael W. Brook*, and ELIJAH L. ROTHELL, | : : : : : | Civil No. 1:25-CV-00636 |
| Plaintiffs, | : : | |
| v. | : : | |
| CITY OF HARRISBURG, PENNSYLVANIA, | : : : | |
| Defendant. | : | Judge Jennifer P. Wilson |

**MEMORANDUM**

The court dismissed Plaintiffs' state-created danger claim with prejudice.

Plaintiffs now claim this was clear error.  They filed a post-judgment motion

asking the court either to reconsider its ruling or to alter judgment so they can file a

second amended complaint.  For the reasons that follow, the court will deny

Plaintiffs' motion.

**BACKGROUND**[1]

Michael Brook ("Brook") and Elijah Rothell ("Rothell") were boating on the

Susquehanna River when a mechanical failure caused their boat to drift over the

Dock Street Dam ("Dam").  The accident tragically killed Brook and injured

---

[1] The court assumes familiarity with its previous memorandum opinion in this matter.  *Hibble v. City of Harrisburg*, No. 25-cv-00636, 2026 WL 312706 (M.D. Pa. Feb. 5, 2026).

1

Rothell.  The administratrix of Brook's estate and Rothell ("Plaintiffs") sued the

Dam's owner, the City of Harrisburg ("Harrisburg").  Plaintiffs asserted in their

first amended complaint, *inter alia*, a § 1983 state-created danger claim.[2]  (Doc. 19,

¶¶ 135–60.)

Harrisburg successfully moved to dismiss that claim.  The primary issue

litigated was whether Plaintiffs adequately pleaded that they were "member[s] of a

discrete class of persons subjected to the potential harm brought about by the

state's actions, as opposed to a member of the public in general."  *Hibble*, 2026 WL

312706, at *3, 5–6.  Plaintiffs claimed that the discrete class of which they were

members was "boaters in the exclusion zone," Doc. 19, ¶ 137, which included the

areas directly upstream and downstream of the Dam that were not open to the

public, *id.* ¶ 117.

The court identified two problems with Plaintiffs' discrete-class theory.

First, the class was artificially underinclusive of those who actually faced the

alleged state-created danger, *i.e.*, the Dam itself.  *Hibble*, 2026 WL 312706, at *5.

As the court explained:

> Plaintiffs' proposed class is underinclusive with respect to both persons
> subject to the risk of harm and the geographic scope of where that risk
> exists.  The Dam creates a risk for many more people than just boaters
> in the exclusion zone.  Anyone on or in the Susquehanna River near the

---

[2] Plaintiffs also asserted state-law claims.  (Doc. 19, ¶¶ 168–86.)  The court declined to exercise supplemental jurisdiction over these claims once it dismissed the § 1983 claim.  *Hibble*, 2026 WL 312706, at *6–7.

> Dam would face the same risk, whether they are boaters or a person who by happenstance finds themselves in the river near the Dam. Moreover, the tragic facts of this case illustrate that the risk of harm is present far beyond the exclusion zone. Plaintiffs never intended to enter the exclusion zone; they drifted three miles from the recreational lake into it due to the malfunction of Brook's boat. (*See* Doc. 19, ¶¶ 24, 67, 71, 76.)

*Hibble*, 2026 WL 312706, at *5. Second, the class of persons who actually faced the alleged danger posed by the Dam—anyone in the Susquehanna River within a reasonable distance of the Dam—was limited neither in time nor scope. *Id.* at *5–6. The court concluded that such a "class contains an indeterminate number of potential plaintiffs," has existed since the Dam was built in 1913, and will continue to exist for as long as the Dam remains in its current state. *Id.* Given this, the court ruled that Plaintiffs' class was not discrete enough to support a state-created danger claim. *Id.* at *6.

### STANDARD OF REVIEW

Plaintiffs' requests to alter judgment and to file a second amended complaint are governed by Federal Rules of Civil Procedure 59(e) and 15(a), respectively. A Rule 59(e) motion typically requires the court to consider whether the movant has shown: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest

injustice."[3] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 230 (3d Cir. 2011) (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)).  The analysis is different, however, when the Rule 59(e) motion seeks post-judgment leave to amend the complaint.  In those circumstances, "the Rule 15 and 59 inquiries turn on the same factors."  *Id.* (quoting *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 280 (3d Cir. 2004)); *Cureton v. NCAA*, 252 F.3d 267, 272 (3d Cir. 2001); *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984).  Those factors include, but are not limited to, "undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility."  *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962).  While Rule 15 calls for leave to be "freely give[n]," Fed. R. Civ. P. 15(a)(2), "the liberality of the rule is no longer applicable once judgment has been entered."  *Ahmed v. Dragovich*, 297 F.3d 201, 207–08 (3d Cir. 2002); *accord S. Jersey Gas Co. v. Mueller Co., Ltd.*, 429 F. App'x 128, 130 (3d Cir. 2011).

## DISCUSSION

Plaintiffs argue that the court misunderstood their allegations and conceptualized the class of persons subject to the state-created danger at too high a

---

[3] These are the same factors that guide courts deciding whether to grant a motion for reconsideration.  *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

level of generality.  (Doc. 36, pp. 4–8.)[4]  They contend that the alleged state-created danger was not the Dam itself but, rather, Harrisburg's commitment to place warning markers upstream from the Dam and its subsequent decision to remove them.  (*Id.* at 5.)  On this theory, Plaintiffs insist that their class is limited to anyone who entered a specific geographic area—the Susquehanna River upstream from the Dam but downstream from where the warning markers would have and/or should have been—during a specific time—when the warning markers were not deployed after Harrisburg committed to deploying them.  (*Id.* at 6–7.)  Plaintiffs claim the court committed clear error by not considering the viability of this class.  (*Id.* at 4–8.)  As relief, Plaintiffs seek either reconsideration of the court's order dismissing the first amended complaint or leave to file a second amended complaint that clarifies this theory.

The court need not get hung up on Plaintiffs' reconsideration request.  Even assuming, without deciding, that Plaintiffs actually pleaded their rearticulated discrete-class theory in the first amended complaint, the time and scope defects the court previously identified still apply.[5]

---

[4] For ease of reference, the court uses the page numbers from the CM/ECF header.

[5] This is not to mention other problems.  Plaintiffs' theory that the dangerous state action in this case was Harrisburg's decision not to fulfill its undertaking to place warning markers appears to be nothing more than an alleged failure to warn, which does not give rise to a state-created danger claim.  *Mears v. Connolly*, 24 F.4th 880, 884 (3d Cir. 2022); *see Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, 765 F. App'x 802, 809 (3d Cir. 2019) ("[A] state-created danger [claim] cannot be premised on the state's mere failure to act."); *Walter v. Pike Cty.*, 544 F.3d 182, 194

First consider whether Plaintiffs' rearticulated discrete class is limited in time. Those harmed by a danger that "existed for an indefinite period of time"—such as "for years" before an accident—are not members of a discrete class. *Chickis v. Campbell*, No. 24-cv-673, 2025 WL 346554, at \*6 (E.D. Pa. Jan. 30, 20205); *accord Crockett v. Se. Pa. Transp. Ass'n*, No. 12-cv-4230, 2013 WL 2983117, at \*6 (E.D. Pa. June 14, 2013). Plaintiffs' proposed second amended complaint alleges that Harrisburg "contracted with a third party for the placement and removal of buoys above the Dam" in 1999. (Doc. 35-1, ¶ 53.) Harrisburg allegedly did so again in 2018. (*Id.* ¶ 54.) It is not clear whether Plaintiffs' theory relies on Harrisburg's alleged undertaking in 1999 or 2018 to define the discrete class. But either way, Plaintiffs are alleging that they are part of a class that faced a risk of harm from alleged actions taken by Harrisburg either 24 years or 5 years before the 2023 accident in this case. This issue is compounded by the lack of any temporal limitation on the class moving forward. Plaintiffs have not articulated why their alleged class would not span into the future indefinitely so long as the

---

(3d Cir. 2008) ("[A] state actor's failure to warn about the likelihood of a private act of violence—even a highly culpable failure to warn—cannot itself predicate liability."); *Bright v. Westmoreland Cty.*, 443 F.3d 276, 282 (3d Cir. 2006) ("It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause."). Even accepting Plaintiffs' argument that liability is premised on Harrisburg's "post[-]notice, policy[-]driven management of an objectively defined hazard corridor," Doc. 36, p. 5, that theory also meets resistance in caselaw. *See, e.g.*, *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1153 (3d Cir. 1995) (finding the relationship element of state-created danger unsatisfied "[w]hen the alleged unlawful act is a policy directed at the public at large").

current conditions remain.  In other words, Plaintiffs' discrete class existed for as long as either 24 years or 5 years before the accident and will exist indefinitely into the future.  There is nothing discrete about that class.

Now consider the scope of Plaintiffs' supposed discrete class.  "[O]nly a limited group of potential plaintiffs" can be members of a discrete class.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 913 n.12 (3d Cir. 1997).  A plaintiff cannot be said to be "part of a discrete class" if "thousands, or even hundreds, of people" risk the same harm.  *Crockett*, 2013 WL 2983117, at *6.  Plaintiffs insist that only those in the area of the Susquehanna River between the Dam and where the upstream warning markers should have been faced a risk of harm.  That is a suspect claim.[6]  Even accepting Plaintiff's position, *arguendo*, it still remains that an indeterminate number of people are certain to have been and will be in that area of the river during the existence of the class—which, again, is not meaningfully time bound.  Such a class can hardly be considered discrete.

_____

[6] As the court previously noted, the facts of this case illustrate that the Dam poses a risk to individuals further upstream than Plaintiffs contend.  *Hibble*, 2026 WL 312706, at *5.  This is still true under Plaintiffs' rearticulated theory.  Brook and Rothell inadvertently drifted downstream into the area between the Dam and where warning markers allegedly should have been.  (Doc. 35-1, ¶ 80.)  Plaintiffs responds with the following: "The drift is . . . not evidence that the 'danger zone' is the river generally; it is evidence of the predictable pathway by which upstream recreational users can inadvertently enter a defined corridor if the gatekeeping demarcation is absent, and it underscores foreseeability of that entry absent warnings."  (Doc. 38, p. 6.)  This argument is nothing more than a concession that the risk of harm extends beyond the limited geographical area on which Plaintiffs' theory focuses.

CONCLUSION

In sum, Plaintiffs' rearticulated discrete-class theory may be more discrete than the theory the court previously analyzed.  It is not, however, discrete enough to support a state-created danger claim.  For this reason, it would be futile to permit Plaintiffs to file their proposed second amended complaint.  An appropriate order denying Plaintiffs' motion will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: June 29, 2026